**DAUGHLEY et ux. v. PETERSON.**

No. A-7543.

District Court

D. Alaska, Third Division, Anchorage.

March 20, 1953.

886

ditional sales contract and, in the alternative, for damages under Section 25 of the Uniform Conditional Sales Act, Section 29-2-25, A.C.L.A.1949, for failure to comply with the provisions of that act after repossession. The property involved, consisting of a cabin, furniture and fixtures, etc., was treated by the parties and described in the contract as personal property, apparently because it was to be ultimately removed from the land.

Under the contract the plaintiffs were required to keep the property insured according to the respective interests of the parties and deposit the policy with the defendant and were prohibited from subletting without the written consent of the defendant. On October 27, 1951, the plaintiffs were notified by the defendant of alleged breaches of the foregoing provisions and that he would resort to the enforcement provisions of the contract unless there was an immediate compliance. However, payment of the installment due November 1 was thereafter accepted by the defendant.

At the time of retaking the property on December 8, 1951, for the alleged breaches referred to, not only had all installment payments been made when due, totalling $1210, but also the payment due December 1st was tendered and refused on ' November 30th—well within the statutory period of 20 days fixed by Section 17 of the Uniform Conditional Sales Act, Section 29-2-17, A.C.L.A.1949. The retaking was made in violation of the provision of that act requiring a minimum of 20 days' notice of default and a resale where more than 50% of the purchase price has been paid. The defendant also retained the payments theretofore made.

T. Stanton Wilson, Anchorage, Alaska, for plaintiffs.

Herman H. Ross, Anchorage, Alaska, for defendant.

FOLTA, District Judge.

This is an action by the buyers against the seller for damages for breach of a con-

 Upon the trial the defendant contended that he was authorized to proceed in the manner set forth under paragraph 11 of the contract, which provides that:

"It is agreed that time shall be of the essence of this agreement, and should the Buyer default in any of the pay-

ments, terms, conditions, and covenants hereof, then, and in any one of such events the Seller may, at his option, terminate this agreement and retain all payments theretofor made as rent and liquidated damages and not as a penalty. It is further agreed that should the Buyer default in any of the payments as hereinabove set forth then, at the option of the Seller, all of the remaining payments shall immediately become due and payable. It is further agreed that in the event of any default by the Buyer, the Seller, may re-enter and retake possession of said property with or without process of law, and the Buyer agrees to quit and surrender the same quietly and peaceably to the Seller or his authorized agent. It is further agreed that nothing contained herein shall be construed to be a release of the Buyer from his obligation to pay the full purchase price for the property as hereinabove set forth."

and in support of that contention, argued that the clause providing for termination authorized a rescission, and that the retaking was a rescission of the contract. This betrays a misconception of the law. A provision for termination does not of itself authorize a rescission. Moreover, Section 26 of the Uniform Conditional Sales Act, Section 29–2–26 authorizes a rescission only upon a specific stipulation therefor in the contract. Although authorities may be found in support of the proposition that a retaking is a rescission, it appears to be settled, under the Uniform Conditional Sales Act, that a retaking is an enforcement rather than a rescission of the contract. It follows, therefore, that paragraph 11 of the contract, so far as it would deprive the plaintiffs of their rights as buyers, is in conflict with Section 26 of the act, Section 29–2–26, A.C.L.A.1949, and hence invalid.

■ There was a sharp conflict of evidence as to whether the defendant had orally consented to a subletting of the property, but it is unnecessary to resolve this conflict because, with full knowledge thereof, the

defendant continued to accept installment payments and, hence, waived the breach. For like reasons I find that any breach in failing to pay taxes was also waived.

■ Although the plaintiffs kept up the insurance in conformity with the contract, they failed to deposit the policy with the defendant. Their uncontradicted explanation was that their only copy of the contract was filed for record in the recorder's office, as required by law, and they had forgotten the provision requiring deposit of the policy. When notified of the breach of this requirement they informed the defendant of the facts, to which the defendant's reply of November 14, 1951, was:

"I appreciate learning that the property is covered by insurance and trust that the policy, with 'mortgage clause attachment' will be placed in escrow with the undersigned immediately."

But the day after writing this letter, the defendant served notice of intention to repossess. Aside from the question which may well be raised whether the quoted language is not of itself sufficient to constitute a waiver, I cannot hold, under the circumstances related, that the failure to deposit the policy was such a material breach as to warrant a forfeiture. In this connection, it should be noted that the defendant testified that it was not until he was informed by the insurer that the plaintiffs had not renewed the insurance that he decided to do anything at all about the breaches referred to, and then it developed that the plaintiffs had in fact procured insurance from another insurer. It would not be unreasonable, therefore, to infer from this testimony that had the defendant known that the plaintiffs had renewed the insurance, he would not have treated the failure to deposit the policy as a breach.

■■ I conclude, therefore, that the defendant was not justified in retaking the property and that the plaintiffs are entitled to the property upon paying the amount due on the purchase price, and also to damages at the rate of $90 a month from December 1, 1951, to the time the plaintiffs are

reinvested with possession, less ground rent and charges for garbage disposal and other services in effect at the time of defendant's retaking of the property. Section 25 of the act, Section 29-2-25 providing for the recovery of damages by the buyer after a retaking, is not applicable where as here there is no finding of an antecedent breach. Plaintiffs should be allowed 1。 days from the entry of judgment in which to remove the property as contemplated by the parties under the contract.

Judgment may be presented in conformity herewith.